INTERDIGITAL COMMUNICATIONS AT ALL VERSUS THE ITC AND LG ELECTRONICS, 2012-16-28. Mr. Bress, when you're ready. Judge Lurie, and may it please the court, this court in Qualcomm required that an analysis or a screen be done whether an assertion of arbitrability is wholly groundless to prevent precisely what happened in this case, which is a party asserting a claim that is entirely divorced from the current agreement or the parts of the agreement... But do we get there? Do we have jurisdiction in view of the way this case was terminated? It was terminated under 1337C rather than DEFG where it would have been appealable, but this was short-stopped and was decided under C which arguably is not appealable. Your Honor, this court does have jurisdiction that it is appealable and I can explain why. And I can understand, by the way, why looking narrowly at the language of C one might come out to a different conclusion. One reads legal language pretty precisely usually, don't we? Yes, Your Honor. However, in this case that's forgetting the strong presumption in favor of judicial review of agency action and frankly forgetting controlling precedent. So if I might explain. Of final agency action. There's no, in fact, the presumption is the other way with respect to non-final agency action. Of course, Judge Breslin. A lot turns, it seems to me, on whether we consider this to be final or not. But I expect you're going to address that issue. I will for sure, Your Honor. I'm more confident now even than I was before. I think it would be helpful here to, first of all, just proceed on a bit of a timeline of this court's cases that address the topic. Even starting in the late 70s, this court found that an action that is not taken under D, E, F, or G is still appealable under 337C if it is intrinsically or effectively a final determination. So that was a first step by this court to recognize that it wasn't going to read D, E, F, and G. Sorry, the reference to D, E, F, and G so strictly has to be formalistic about it. Then the Bowen case is decided, Bowen v. Michigan Academy in 1986 by the Supreme Court, which holds that the affirmative statement by Congress that certain things are appealable is not enough given the strong presumption in order to make other actions, agency actions, not appeal. In 1988 then, two years later, this court decided the Allied Corp case. In that case, there was an action taken by the ITC under H, not under D, E, F, or G, but rather under H. And this court specifically looked at the question whether since it wasn't taken under D, E, F, or G, does that mean that it was not appealable? And the court found that it was appealable nonetheless because it was effectively a final determination. In Farrell, which is decided a few years later, this court held that a termination for arbitration was effectively a final determination and therefore appealable. Wasn't Farrell premised on it being premised on prejudice? Well, Your Honor, yes. Two notations on that I think are quite critical. First of all, of course, the ITC doesn't, like a district court, formally dismiss or terminate things with prejudice or without. So it was a descriptive use of the term by this court. And the court was contrasting it with Block, the case before it with the case Block that it had decided a few years previously. In Block, a termination had occurred because there had been a reexamination of the patent. And the court found that that was not akin to a final determination. In Farrell, in contrast, the court said, unlike in Block, here the petitioner or the plaintiff can't immediately refile, can't refile the case. But you're saying this was a dismissal of prejudice, a determination with prejudice, right? That's what I'm saying. Because in the same sense, Your Honor, because here, just as in Farrell, we couldn't go back to the ITC after it terminated the case and say, we'd like to refile. We may never be able to do that. You may never, but you may. I mean, if the arbitrator should say, this is none of my affair, right, which you expect that the arbitrator would, then you're back at the ITC and you can file again. So it's kind of quasi with prejudice, isn't it? Well, I mean, it's with prejudice if the arbitrator comes out one way. It's not with prejudice if the arbitrator comes out the other way, correct? In terms of the technical meaning of with prejudice, meaning you can file again or not, I agree that you can't tell at the time of the termination here, or frankly, probably with many terminations for arbitration, whether it might possibly come back to the ITC or not. Because that will depend on how the arbitrator interprets the arbitration clause, how the arbitrator decides the case, frankly, and whether the case even comes to a conclusion. So given that this is kind of the twist in between the with prejudice and without prejudice cases, how do we assess whether or not this invokes the kind of policy concerns that you've been laying out with respect to the presumption of reviewability, but not with respect to matters that are non-final? Your Honor, first of all, I would say that this is final in the sense that even if we get to come back before the commission, it will be filing a new case. It's not as though at that point we'll be renewing the case. It will be filing an entirely new investigation. It will be probably 18 months later. The facts and circumstances may well have changed by that time. And in the interim, we're not allowed to do anything. In terms of the effect on us, the prejudicial effect, it's actually a worse prejudicial effect than existed in Ferrell itself. Is there any Chevron deference here? Commission interpreting a statute that's entitled to interpret, administer? On the merits, Your Honor. We're getting to the merits now. No, on jurisdiction. Not at all. The jurisdictional provision is this court's jurisdiction, not the agency's jurisdiction. I've never seen a court defer to an agency's view of what its reviewing court's jurisdiction would be to review its actions. The difficulty in this question for me, and I think it's a hard question, is leaving aside, we won't leave aside the cases, but you've talked about the cases. But the statutory language is quite clear, is it not, in terms of highlighting DEF and G. And it doesn't include the arbitration provision. Now, you've got other provisions that follow in C that talk about H. And you mentioned the case which dealt with H. I mean, the odd thing about the statute is it talks about final determinations under DEF and G, but it clearly contemplates review for other things, including subsection H, even though it doesn't explicitly provide for an appeal. Right. So what are we to make? I mean, just taking the terms of the statute, isn't it fair to say Congress explicitly identified what it wanted to be appealable and reviewable? And obviously, they were thinking about arbitration. That's what is the lead of the subsection. And they didn't include it. And therefore, we have no alternative but to conclude that we don't have jurisdiction. Your Honor, I, of course, would disagree with that proposition. You'd expect me to. And I do. I think the case that this Court decided, the Crucible case, answers that question. Crucible, which was decided after the 1994 amendments, involved in part... Is that the non-prep case? Is that our case, the non-presidential case? It's a non-presidential case in this Court. And this Court looked at the question whether a modification to a consent agreement was appealable. Now, a consent agreement, of course, is a reason for terminating under C, just like arbitration is a reason for terminating under C. The Court looked back to the Allied Corp case, the H case, if you will, and found for the same reasons. And I think that's what's consistent with Bowen. I mean, if you look at how the Supreme Court and Bowen addressed the issue, it really is looking for a clear and convincing statement by Congress that we don't want review here. And given that Bowen existed, that Allied Corp had been decided, before 1994, and frankly that Farrell had been decided before 1994, if Congress meant to make a clear and convincing statement that we don't want review here, they could have done that. And I don't think under Bowen it's fair at all to infer it. In terms of finality, if I might return to that for one moment... Well, so are you saying that it's superfluous, then? I mean, if we're supposed to say that it's all covered at the final determination, then aren't you saying that the language, the list of language in C identifying D, E, and F is superfluous? I think that the court, I know that the court in both Crucible and in Allied Corp, and Allied Corp, of course, was precedential, found that, in fact, that it was too restrictive a reading to say that you're confined exactly. I think how this court has approached it all the way through, including in Farrell, is to look whether the determination is akin to a final determination. At least that's where this court's precedents take us. And in terms of being akin, in terms of the prejudice, I noted that in this case we are more prejudiced than the parties were in Farrell. The reason was that in Farrell, the entire matter could be decided by the arbitrator, perhaps in quick order. In this case, one small aspect of this case will be arbitrated. As we've said, we think it's entirely a detour on a completely implausible assertion of a license. But that detour's going to take us well nigh 18 months. At that point, we'll have to go back for an entirely new... I'm sorry to interrupt, but your time's running short, and I just wanted to ask you, we didn't discuss the first question, or the merits question in this case. However, given the markings of confidentiality in the briefs, I feel like we're kind of constrained to do that here, as well as writing an opinion that analyzes it. Your Honor, I've conferred with opposing counsel, and the parties are in agreement, that but for the specific numbers, the numerical values of the dollar amounts and percentages that are in the underlying license agreement, this court should feel free to ask questions,  with regard to the relative substantive provisions of the agreement. So I'm happy to address... Does that mean you're going to refile your briefs? Because the briefs that were filed have deletions for a substantial amount of information. We can refile our redacted briefs, Your Honor, certainly to reflect that. This court, of course, has our unredacted briefs, as well. Assuming, just quickly, assuming we have jurisdiction, you want to tell us why the assertion of arbitrability is or is not wholly groundless? Yes, Your Honor. There were two mistakes that were made here. One is a process mistake in how to decide that one was the result. In terms of the process mistake, the ALJ in this case refused to take a hard look at whether it was plausible that this dispute fell within the scope of the arbitration clause, because that would require him, in this particular case, because the arbitration clause says arising under the agreement, to take a look and see whether this license defense plausibly arises under the agreement. He said, well, that's the merits. I can't look at that. The Supreme Court in Lytton and seven courts of appeals that have addressed a similar issue have said, even though normally you're not supposed to go and look at the merits when you're deciding arbitrability, when there's an overlap, as there is in this case, you've got to do that, because it's your duty to, in this case, apply the screen, for example, of arbitrability. You can walk through that pretty easily. You've got to figure out, as this court held in Qualcomm, whether the dispute asserted is plausibly within the scope of the arbitration clause. Here, the arbitration clause is limited to disputes arising under the agreement. How do we, what's the standard of review for the ALJ's determination? They found it was wholly groundless, and we review that under what standard? Your Honor, because the ALJ made a mistake as a matter of law in how to apply that test, I think it's de novo. The ALJ never actually looked to see whether there was a plausible argument that there was a continuing license for 3G products. He stopped short of that because he wrongly felt that he was compelled not to look at that question. You can see his writing on that on page 44 of the JA. Had he gone forward and looked at the question of whether it was wholly groundless, there's no question in this case that the assertion of a license for 3G is utterly implausible. Is it your view that this is an easier case in terms of wholly groundless or not because the agreement had expired? Oh, absolutely. Does that always give a court more license or a reviewing authority more license to scrutinize that given the expiration? Absolutely, Your Honor. You've got an agreement that has expired by its terms. You have a survival clause that by its terms only preserves the part of the license grant that has to do with 2G. So it's quite clear that there is no continuing license for 3G. It's as though you had a 100-year-old agreement that had an arbitration clause and somebody came back later and said, darn it, we're covered under that even though it expired 80 years ago. Plainly, that kind of assertion is wholly groundless. The arguments that have been made to the contrary are really, I hate to use the word frivolous, but close to it. If you look at the first argument, they say that the parenthetical in 6.19 that says that the only part of the grant that survives is the grant that's to 2G, they say, well, that's just meant to be descriptive of the entire grant, not restrictive to 2G. But if that were true, they wouldn't have used the word only. And in fact, of the five provisions where there are parentheticals in 6.19, three of them use only, two of them don't. So three are restrictive, two are descriptive. So plainly, that argument doesn't work. They then also argue, well, the grant itself doesn't have the words during this term. Well, first of all, it doesn't have to because, as Your Honor pointed out, when an agreement terminates, the assumption is that the license that was granted under it terminates as well. That's what this Court held in A-specs. Beyond that, there was no need to add that language because the language effectively is already there. If you look at the last sentence of 2.1, it provides that, provided that there has been no default under the agreement, that LG will have a license as to 2G only, a paid-up license as to 2G only at the end of the term. Mr. Bress, your time has expired, but we'll give you three minutes of rebuttal time. We'll hear from the other side. But let me say, in between arguments, we appreciate your substantial concessions on confidentiality, but it would have been nice to have gotten that before we spent all the time with the briefs, some of which have had lots of stuff blacked out. So we'll hear from Mr. Hughes for the ITC. And you have eight minutes. Good morning, and may it please the Court. If I may come back to jurisdiction, there is Congress has made a clear and convincing statement that the commission termination of respondents under subsection C is not subject to review. Well, they didn't make it that clear. They didn't say there shall be no review. I mean, that would have helped all of us get through this, right? We're bound by our presidential opinions, including Farrell. And if we can, are you just agreeing that the portion of Farrell relied upon by your friend was actually overruled somehow by the congressional insertion of the arbitration language? The commission isn't taking a position on that. With respect to Farrell, the commission's position does not apply to this case. And it doesn't apply because in Farrell, there's a fundamental difference between Farrell and this case. In Farrell, the commission terminated for the arbitrator in favor of arbitration. Here, the commission hasn't done that. The commission has simply terminated for the arbitrator to determine arbitrability in the first instance. There's a big difference between the two. In Farrell, the court distinguished Farrell from Block on the grounds that... But then if the arbitrator determines arbitrability in favor of the other side, then they can't go back to the commission. Right, but it's not the commission preventing them from coming back. It's their own agreement preventing them from coming to the commission. It's effectively a choice of Farrell. They've chosen to litigate, to arbitrate the case. So it's not the commission preventing them from coming back. Well, I mean, that gets us into the other issue we've been discussing this morning on whether or not it was wholly groundless. I mean, there's a viewpoint that they've committed. I mean, nobody says they've committed. We're just saying whether or not the assertion of arbitrability is wholly groundless, right? If there was... And it's a circumstance where let's assume the ALJ is just entirely mistaken for whatever reason, and there's actually no arbitration agreement at all. There's no agreement that exists, and he got it confused with another case, and he reached a determination that the parties have to go to arbitration. Would we not have the ability to review that here? In that case, the commission would be acting without authority. And so I believe the court would have a chance to review it. Well, so we would... But we'd have to determine... I mean, they'd come up here, and we'd have to determine whether or not the commission was acting without authority. Well, if we would agree with Mr. Bress with respect to whether or not this was wholly groundless or not, then... Well, how is that different from saying the commission was acting without its authority? In this case, there is an arbitration clause in the agreement. And the agreement is expired. It hasn't expired with respect... The dispute is that it hasn't expired with respect to the product asserted in the commission. That is the heart of the dispute. Well, that could... Okay. That is the heart of the dispute. That is what the arbitrator has to decide, to decide this dispute. So that could be true of... You know, I gave you the hypothetical of whether no arbitration agreement had ever existed. But that could be true if there was an agreement that was 100 years old, as Mr. Bress suggested. And so it wouldn't, you know... It wouldn't matter that the agreement is expired. They still would have to send it back to an arbitrator to determine it. It would. I would like to draw the court's attention to the fact... The standard is a wholly groundless standard, not just a groundless standard, a wholly groundless. The fact in this case, there's no dispute that the asserted patents come under the agreement. There's no dispute. There's no dispute that these accused products fall within the agreement. There's no dispute about it. The only dispute is whether... The claim of arbitrability. The only dispute is whether these... Whether LG has a continuing license under this agreement. And what LG's claim is that, taking a look at section 6.19 and section 2.1 of the agreement, they do have a continuing license to these products. That is the heart of the dispute. If the commission had settled that dispute, the commission would have invaded the province of the arbitrator, which this court has told the commission not to do. Let me circle back, if I could, to the jurisdictional question and make sure I understand exactly what your position is with respect to the arbitration dismissal. If the dismissal by the commission had been on the ground that the dispute was arbitrable, is it your position that that decision would be appealable to this court? That is not the case. I understand. That's why I'm asking it in a hypothetical. I just want to draw the distinction that that is not the case. I understand. And the commission hasn't taken a position on that. If you say you haven't taken a position on that, what you're saying is that you don't read this statute as necessarily foreclosing that appeal. Is that correct? That is correct. If the statute does not necessarily foreclose that appeal, it seems to me that totally undercuts the argument that you began with, which is to say that the references to D, E, F, and G conclusively show that Congress has spoken to this issue. Isn't that right? There are two competing, potentially competing theories here. One is the commission would have to consider whether the termination is equivalent to a final determination. And this court case law suggests that if it's equivalent to a final determination, then it's reviewable. So the commission would have to weigh that in conjunction with the statutory framework of Section 337 and make a determination as to whether… But if you're saying that it all turns on finality, then it seems to me you are walking away from the D, E, F, G argument that certainly your co-counsel are making. Not necessarily. Not necessarily. What I'm saying is the commission would have to weigh those two, would have to weigh them. Well, suppose that the commission found that a particular order was final but was not within D, E, F, or G. And let's just take, for example, that there's a settlement between the parties and one of the parties contests whether it was settled or not, a reference to something that appears earlier in C. And the commission says, we think there was a settlement. You're out of here. Goodbye. Closes the doors with prejudice. Is that appealable to this court? How settlement typically presents itself to the commission is the parties typically agree to settle the current dispute. And there's a question as to whether that dispute has been settled or not. And the commission comes down one way on that and somebody wants to appeal. Is that appealable to this court, notwithstanding that it doesn't fall within D, E, F, or G? The commission would have to determine if that's a final determination. What's your position here? My position is that would likely be a final determination. Okay, so everything turns on finality and nothing turns on D, E, F, or G. Dispositively. No, no, the finality actually implicates D, E, F, or G because it's finality with respect to whether the commission will or will not exclude products from entry. So the hypothetical you presented, the commission would have made a decision not to exclude products from entry. So it always implicates D, E, F, or G. That is implicated in there. Well, that's the upshot of what the commission did here, though. Ascending it to the arbitrator, the upshot is that the practical effect is that something has been done with respect to whether or not these products can enter. That's why I'm drawing the distinction between what the commission did here and what the commission did in Farrell. In Farrell, the commission terminated infeasible arbitration. And as the court said in Farrell, Farrell couldn't request a second investigation. The commission hasn't done that here. Here the commission has simply terminated for the arbitrator to decide arbitrability in the first instance. And the agreement between InterDigital and LG specifically, clearly, and unmistakably, no one disputed this, delegates that responsibility to the arbitrator. The commission could not make that determination in the first instance. Well, except we're talking about an expired agreement. That is the heart of the dispute, whether it's expired or not. Well, I don't think anybody's arguing that the agreement expired. The question is what lives after the agreement, right? There's no dispute that the agreement expired, right? The dispute is that they have a continuing license to these accused products. That is the heart of the dispute. But if we step back a moment, there is no dispute that these asserted patents come under, they've fallen under the agreement. The product, these accused products before the commission also fall under the agreement. For the commission to decide this narrow dispute as to how to interpret Section 6.19 and Section 2.1 would resolve the dispute and that would invade the province of the arbitrator. The commission couldn't do that without invading the province of the arbitrator. For the arbitrator to decide, that's what they agreed to. Thank you, Mr. Hughes. Your time has expired. We'll hear Mr. McEwen. McEwen, thank you, Your Honor. Good morning, may it please the court. I would like to start with the question of the court's jurisdiction. And frankly, I think this is one case where we do have professionally clear statutory language and a statutory framework. I take it that your position is not the same as the commission's position on this issue. You embrace, well, more directly, I guess, the CDEF argument, right? Absolutely, Your Honor. And as far as you're concerned, full stop regardless of finality, non-finality, and so forth. So in that regard, you and Mr. Hughes are not on the same page. Am I right? As I understand what he said today, maybe that's correct, Your Honor, but I think in the briefing they've been consistent with the fact that you've got to have one final determination. But then you also need to move on to a final determination with respect to what. And that's required by the statute with respect to D, E, F, and G. And if you look at the first sentence of subsection C, it talks about the commission's investigatory mandate. The commission shall determine whether or not there's a violation of this section. Except it may, in some circumstances, terminate without making a determination, such a determination. And the one they're talking about is whether there's a violation or not. Then you go to the eighth sentence. And the eighth sentence is this court's jurisdiction. And they made up perfectly. Because what the eighth sentence talks about, of course, is the court's jurisdiction. And it says, final determination of the commission under subsection D, E, F, or G. And that's referring to the question of violation or not. So the eighth sentence in the first sentence made up perfectly. And that was the intended. So you can't just stop at the rightness question, which is the finality question. You've got to go on to ask, OK, whether it was under D, E, F, or G. What about the remainder of that paragraph, which talks about other avenues of review under H, for example, at the conclusion for sanction? And that says that, I assume you construed that as being, we would have jurisdiction to review that under the H. Absolutely, Your Honor. OK. So that is also an exception to final determinations of D, E, F, and G, correct? That's correct, Your Honor. OK. So are you saying that because they listed just that one exception, that's the only one? I am, Your Honor. And it's an important point. Because that amendment came in 1994. That amendment being the arbitration amendment. The tenth sentence, which is the eighth sentence, where J and H were added. The Congress added J and H as additional subsections which an appeal could be taken. And at the same time, in the same amendment, they added in the first sentence the ability to terminate through arbitration agreements. Well, don't you think, though, that one could fairly construe, I mean, the first sentence says, if there's an agreement to present the matter for arbitration. I think it's fair to assume Congress wasn't contemplating the situation we have here. Because here, obviously, there's a dispute, a serious dispute, as to whether or not there was an agreement to arbitrate. So can't one fairly construe the first sentence of C as being one in which Congress never contemplated that there would be a dispute because this sentence is about the agreement by the parties to present it to arbitration? Well, Your Honor, I question the assumption a little. I mean, there is no dispute in this case that there is an agreement to arbitrate. And the question is, the underlying question, of course, is whether the license grant continues beyond the expiration of the agreement. That's a substantive question that, frankly, I don't think this Court needs to get into. With respect to the question on the jurisdiction, though, it was clear that Congress was trying to bring conformity with respect to 337 and the FAA, the Federal Arbitration Act. And in doing so, Congress did that, looking at the FAA, which has been around since 1925, to promote the public interest in – Wait a minute. Under the FAA, under district courts and arbitration proceedings, couldn't you bring this kind of dispute to a district court? Oh, well, in the district court, for appellate jurisdiction under Section 16, as I'm referring to, for appellate jurisdiction under FAA, Congress deprived appellate jurisdiction in situations where a court stays a district court action in the face of an arbitration agreement and in a situation where a district court compels arbitration. There's no jurisdiction for appeal in that situation. For a stay. For a stay. But if there's a dismissal, there's an appeal. You're right, Your Honor, there is recent law on dismissal with prejudice in the face of an arbitration. That is right under Subsection 16A. That is correct, Your Honor. But it's important to note, though, in this situation, right, we have in the statute we have here, this under C, again, comparing C, first sentence, to C, the eighth sentence, it's clear that C is not listed. Well, no, but I think we agreed with you, and I thought, and so correct me if I'm wrong, that in our discussion two minutes ago about the FAA, you were suggesting that what Congress was contemplating was a procedure just like that. Well, if that is the case, then we ought to assume, should we not, that Congress was also contemplating that there would be some sort of review in these circumstances. In fact, the FAA is weighted more in favor of arbitration in the sense that it does not provide review in situations I mentioned, and it actually does provide for appeal, the FAA, when there's a denial of a stay or there's a denial of a compelling of an arbitration. So it actually does promote arbitration more than, I would say, 337 in that regard. Can I ask you, if InterDigital had filed a petition for a writ of mandamus, would you be maintaining that we don't have jurisdiction to entertain that? Well, there was a case, the Gerdes case that was cited in the briefing by the opposing party, by InterDigital, where there was a mandamus issue, and the court ended up reaching the substantive issue on mandamus and denied mandamus in that case. The grounds for jurisdiction, though, was vacated ultimately, so I don't think the court squarely dealt with the jurisdictional question in that case. But what do you think? You know, I think mandamus is sort of in aid of jurisdiction traditionally. The court can rule on a mandamus petition in aid of jurisdiction, but what I will say here is under C, you don't have jurisdiction for reviewing a termination based on arbitration. And that would be true in your view even, I take it, again, contrary to what I understand Mr. Hughes' position to be, in the Ferrell situation, right, in your view? Right. So you think Ferrell is just no longer good law after the 94? Absolutely right. Not only with respect to the question of whether arbitration should be a ground for the ITC to step aside, but also with respect to the question of this court's jurisdiction, which was addressed in the footnote in Ferrell, you say that the Congress blew by both of those, not just the first. That's correct, Your Honor. I think to say that Congress somehow ratified footnote 4 of Ferrell in 1994 when it amended the first sentence. Well, I don't think we would say that it ratified it. The suggestion is that we don't need, or the other side doesn't need to say that they ratified it. It just has to say that they didn't deal with it at all, that they ignored it. Well, I think they did deal with it. Because remember, in 1994, they not only added the authority to terminate based on arbitration in sentence 1, but they also, in 1994, added the 10th sentence, expanding jurisdiction of this court for review under bond, termination bonds, and under J&H. So they actually, at the same time, they were overturning Ferrell in sentence 1. They were expanding the court's jurisdiction in sentence 10 and specifically not putting in subsection C as a basis for review. And your position, and you allude to this briefly in your brief, but I want to make sure that I have this. If there is, as I lay that in my hypothetical, if there is a dispute over an actual settlement, and that comes up on appeal, there's a dismissal by the ITC concluding that there was a settlement. One of the parties thinks it wasn't. It comes up. You say, what as to that? Then that's fine. We're done, finished, out of here. You've settled. You're never coming back. It says, with prejudices it gets. You say that's not within this court's jurisdiction? I would say that this court can look at and see really what was the basis for termination. If it really was a D, E, or F, G termination. No, they never got to the merits. They simply said, you folks have settled this dispute. We have nothing more before us. This court would not have jurisdiction to hear that appeal. And if the court, that's an issue for Congress. The fact of the matter is the first sentence, C, any termination under the first sentence is not within this court's jurisdiction. Review is not within this court's jurisdiction. Now, if I can just briefly address. Extremely briefly, one sentence. Okay, one sentence. I guess the issue on the Holy Ground review. I think consistent with footnote four of the Qualcomm case, the review here would be abuse of discretion, arbitrary and capricious review on the question of Holy Ground. And that was discussed in footnote four of Qualcomm. But again, going back to the nature of the inquiry, and I'll use my one minute quickly here. The nature of the inquiry here is the threshold question. So if you're going down the road of examining the license, looking at the terms, looking at a construction of the license and the detail that you would require to make the ultimate determination whether LG is licensed or not, you've gone too far. The Qualcomm check, if you will, the check that needs to be made, it's really just the link, the establishment of the assertion of arbitrability with the agreement. And what you're checking is, is there a connection there? And that's all the Holy Ground test is supposed to do. And that's exactly what the commission did in this case. They went through and they made that connection and determined that the assertion of arbitrability was not Holy Ground. The connection was there. Thank you, Mr. McKeon. Thank you. Mr. Burrus, we'll give you five minutes. Thank you, Your Honor. I appreciate that. I'd like to address jurisdiction first. Counsel, I think, is mistaken on the other side for at least three reasons. First of all, the Crucible case, which I misspoke earlier, Your Honor, is a published decision. And Judge Lurie, I guess it was your decision, so I apologize it was published. It may have been my opinion, but it wasn't my decision. Understood. It's just I apologize for not recognizing that it was a published one. That's all. Decision of the court. Indeed. At any rate, Crucible is decided in 97. So in 1994, you've got all of the amendments that are at issue in this case. Crucible involved, in part, the modification of a consent order. Consent orders are dealt with, as this court knows, under C. Not under D, E, F, or G, or H, or anything else. It's under C. And the court held that the modification, the appeal over the modification of that consent order, was applicable. The court had jurisdiction over it. If you combine that with the earlier decision, on which it relied, by the way, on which this court relied, in the Allied Corp case, the court has now twice held that D, E, F, and G are not exclusive. So we know that. And Your Honor, it is true that H today provides. It provides for review. But at the time Allied Corp was decided, it didn't provide, so provide. Number two. Let's discuss the FAA, because I agree that Congress intended to reconcile the practice in the ITC with the practice in the district courts. An opinion that we cited to this court, the Salem case, written by then Judge Sotomayor, addresses dismissals with and without prejudice for arbitration and whether they are appealable. The court holds, the Second Circuit in that case held, that even a dismissal without prejudice is appealable. And I would refer the court to that case and the reasoning in that case as to the FAA on this concern. What we're asking for, again, here is to be treated the same way. Do you think a stay by the ITC, assuming it's within their authority to do, to enter such, I guess it is, would be an appealable, even if you had a claim of substantial ongoing injury? No, I don't think it would be appealable, Your Honor. And I understand that a stay, in some sense, can be comparable. But I'll stay with where I spoke at. A bright line between dismissal and stay. A bright line between the two. I think that would make sense. Which parallels I take at the FAA. Precisely. As to Gerdes, if I may, Gerdes actually said that Farrell had not been overruled. And while Gerdes goes on, after a petition for rehearing, to vacate its prior opinion, the vacating of the prior opinion had solely to do, if you look at what the court wrote, with the mandamus part of what the court was dealing with, not with the appeal part. The original opinion had dealt with both the appeal and the mandamus. On rehearing, the court has different reasoning for turning down mandamus on the merits. It doesn't touch what it had previously said about the appeal itself. So I don't think the court meant to vacate what it thought. But it's unpublished in any of it. I just wanted to clarify. Let me ask you about Mr. Hughes's construction of the explanation for why Farrell fits within, is consistent with, at least, a construction of Section C that focuses on D, E, F, and G, which is to say that when you get thrown out unequivocally and permanently, as was the case in Farrell, you have, in effect, been denied relief under D, E, F, or G. And therefore, you, in that sense, are at least akin to someone who has been explicitly denied relief. And therefore, there may be appeal, even under the hard reading, if we'll call it that, that LG gives to Section C. Could you comment on that? Oh, of course, Your Honor. I agree with that, of course. You have been denied relief in a way akin. I would say in this case, you have as well. Just as in Farrell, one could argue, well, you're getting what you agreed to. You agreed to good arbitration. Here, you're getting thrown out of the ITC, whose remedy, of course, is exclusion. So you're not being able to exclude the products. They're still flooding in. But you're not necessarily permanently being thrown out. You may or may not be, depending on what happens in arbitration. But this court, getting back to it, the ITC, without any warrant, effectively, in a case like this, throws us into arbitration. Even counsel for the ITC said, given one of the hypotheticals, well, if there wasn't an agreement at all, that perhaps you could go up. Well, this is akin to that. There's an agreement. It terminated. And unequivocally, the license that they're claiming terminated as well. This is very much like that situation, where we're being deprived of an exclusion order, probably for a year to 18 months, if not longer, if it stays in arbitration. And yes, I think that is akin to with prejudice. If we can file a new case, a different case later, the facts and circumstances will have changed, et cetera, that may be. But it's not the case we filed. Finally, the discussion. Very finally. Very finally. The discussion on what the ITC should have reached or shouldn't have reached. Counsel talked about, the question is whether there's a connection with, between their defense and the underlying agreement. There are arbitration clauses that read that way. Broad form arbitration clauses that say in connection with, in relation to, et cetera. This case says, claims arising under. And to decide whether the claim plausibly arises under, the court has to look at the merits. That's what the Supreme Court did at Lytton. It's what seven other courts of appeals have done in similar circumstances involving terminated collective bargaining agreements, et cetera. It was flat out error for the ITC to refuse to do so here. Thank you. Thank you, Mr. Brest. We'll take the case under advisement.